UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
JAIME WILLS                                               :
*on behalf of himself and all others similarly situated,* :
                                          Plaintiff,      :           13 Civ. 2733 (PAE)
                                                          :
                    -v-                                   :           OPINION & ORDER
                                                          :
RADIOSHACK CORPORATION,                                   :
                                                          :
                                          Defendant.      :
                                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Jaime Wills ("Wills") brings this putative class action against RadioShack

Corporation ("RadioShack").  Wills claims that RadioShack's use of the U.S. Department of

Labor's ("DOL") Fluctuating Workweek ("FWW") method for calculating overtime pay has,

since May 5, 2011, violated the rights of RadioShack's New York-based non-exempt store

managers under New York Labor Law ("NYLL") §§ 191 *et seq*.  Wills claims that RadioShack's

payment of performance-based bonuses to those managers precluded it from using the FWW

method, and required it to use instead the more generous "time-and-a-half" method of calculating

overtime.  Wills seeks to recover the difference between the overtime pay yielded by those two

methods.  He also seeks liquidated damages under the NYLL, and declaratory judgments that:

(1) RadioShack's method of calculating overtime pay since May 5, 2011 violated the NYLL; and

(2) RadioShack is collaterally estopped from contending that using the FWW method after that

date complied with the NYLL.

        RadioShack now moves to dismiss, on the grounds that its use of the FWW method to

calculate overtime was permitted under the NYLL.  For the reasons that follow, the Court agrees

with RadioShack, and holds that the NYLL, which in all pertinent respects tracks the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., permitted RadioShack to use the FWW method to calculate its store managers' overtime pay.  The Court, accordingly, grants the motion to dismiss.

## I.   Background

### A.   RadioShack's Bonus Plan for Non-Exempt Store Managers[1]

Between October 2008 and December 2011, Wills worked as a non-exempt store manager for a RadioShack in Tonawanda, New York.  Am. Compl. ¶¶ 11–12.  Wills was paid under RadioShack's "Non-Exempt Store Manager Compensation Plan" ("SMCP"), which applied to managers of RadioShack stores outside of California with more than $750,000 in annual sales.[2]  *Id.* ¶ 15; SMCP at 1.  Under the SMCP, RadioShack paid store managers "a base salary for all hours worked each workweek," plus quarterly and year-end bonuses "based on the performance of the store to which the Store Manager is assigned."  Am. Compl. ¶¶ 17–18;

---

[1] For the purpose of resolving the motion to dismiss, the Court assumes all facts pled in the Amended Complaint ("Am. Compl.") (Dkt. 21) to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The following abbreviations are used herein for the parties' memoranda of law:  (1) Defendant RadioShack's Motion to Dismiss Plaintiff's First Amended Complaint ("Def. Br.") (Dkt. 23); (2) Plaintiff's Opposition to RadioShack's Motion to Dismiss Plaintiff's Amended Complaint ("Pl. Br.") (Dkt 24); and (3) Defendant RadioShack's Reply in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Def. Reply Br.") (Dkt. 25).

[2] The original Complaint contained two exhibits:  (1) the SMCP; and (2) excerpts from the Federal Register containing the DOL's interpretive ruling, which took effect May 5, 2011, discussed *infra*.  *See* Dkt. 1 at 11–46.  The Amended Complaint did not attach these two exhibits.  However, because the Amended Complaint incorporated the SMCP by reference, *see* ¶ 15, the Court may consider the SMCP in deciding this motion.  *See Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citing *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)) (on motion to dismiss, the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken").

SMCP at 1.  These bonuses were performance-based and non-discretionary.  Am. Compl. ¶¶ 18, 45; *see also* SMCP at 1–4.

The bonuses were calculated as follows.  Each store manager had a "target bonus" of 20% of his or her base salary, meaning that if the store met its performance targets in all respects, the manager received 20% additional pay.  SMCP at 1.  This bonus was comprised of quarterly bonuses and a year-end bonus; where the performance targets were met, the quarterly bonuses added together supplied half of the 20% bonus and the year-end bonus supplied the other half.  Quarterly bonuses were calculated based on the store's "actual sales performance compared to sales plan."  *Id.*  For instance, if the store's actual quarterly sales amounted to 95% of the target set in the sales plan, then the manager received 25% of his or her "target bonus."  If actual sales reached the target set in the plan, the manager received the entire "target bonus."  And if a store achieved 120% or more of the target set in the sales plan, the manager received 150% of the "target bonus."  *Id.* at 1–2.

An illustration:  Take a store manager earning a $30,000 annual salary.  The manager's total bonus target was $6,000 (20% of salary).  Half, or $3,000, was allocated to quarterly bonuses, *i.e.*, $750 per quarter.  If a store met its sales expectations in a quarter, the manager received the full $750 bonus.  If the store achieved 120% of expected sales, the manager received a $1,125 bonus (150% of $750).  But, if the store achieved only 95% of expected sales, the manager received a $187.50 bonus (25% of $750).

The other half of the bonus target was allocated to a year-end bonus.  It was calculated based on a concept RadioShack calls Net Profit Before Bonus (NPBB).  *Id.* at 2–3.  Each store had an annual NPBB target; the year-end bonus for store managers turned on how the store performed relative to this target.  If the store achieved 85% of the NPBB target, the manager

3

received 25% of his or her year-end "target bonus."  If the store met the NPBB target, the

manager received 100% of that "target bonus."  And if the store reached 115% of the NPBB

target, the manager received 150% of the "target bonus."  *Id.* at 3.  Thus, a manager whose year-

end target bonus was $3,000 would receive the full $3,000 if the store met the NPBB target

exactly; $4,500 if the store's NPBB achieved 115% of the target; and $750 if the store's NPBB

was 85% of the target.[3]

In addition to base salary and bonuses keyed to store performance, RadioShack paid store

managers for overtime hours worked.  Am. Compl. ¶ 19; SMCP at 1.  To calculate overtime pay

under the SMCP, RadioShack used the FWW method.  Am. Compl. ¶ 20 (citing 29 C.F.R.

§ 778.114).  Under this method, a manager who worked more than 40 hours in a given week

received, in addition to base salary, one-half (50%) of the "regular rate" for every hour over 40

hours worked.  *Id.* ¶ 19.  The "regular rate" was calculated by dividing the manager's base

weekly pay by the number of hours worked that week.  *Id.*  So, if a manager's base weekly pay

was $1,000, and he or she worked 50 hours that week, the "regular rate" for that week was

deemed to be $20.  The manager then received, as overtime pay, one-half of this "regular rate"

for every hour worked above 40.  Thus, the manager would receive an additional $10/hour for 10

_____

[3] Wills asserts that it is a disputed question of fact as to whether RadioShack's bonuses are non-discretionary and performance-based.  *See* Pl. Br. at 18–19.  Wills' own Amended Complaint, however, alleged that RadioShack's bonuses were "based on the performance of the store to which the Store Manager is assigned," Am. Compl. ¶ 18, and that RadioShack paid its non-exempt store managers "non-discretionary bonuses," *id.* ¶ 45.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (a district court must accept as true all well-pleaded factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  Furthermore, Wills also incorporated RadioShack's SMCP in his Amended Complaint (at ¶ 15), which, as summarized above, sets out the mechanistic formula by which RadioShack calculates the bonuses at issue in this case.

hours of overtime, for a total of $100.  The manager's total compensation for the week would be $1,100.[4]

### B.    The DOL's May 2011 Final Ruling, and the *Sisson* Litigation in Ohio

Wills' lawsuit has its roots in a 2011 ruling by the DOL and an Ohio lawsuit based on that ruling.

On July 28, 2008, the DOL issued a Notice of Proposed Rulemaking ("NPRM").  *See* 73 Fed. Reg. 43654 ("Updating Regulations Issued Under the Fair Labor Standards Act").  The notice described a number of proposed modifications to regulations under the FLSA.  Only one is relevant here:  A proposed rule that would have stated that an employer's payment of bonuses to an employee did not prevent the employer from using the FWW method to calculate the employee's overtime.  Specifically, the proposed rule would have added this sentence to the end of 29 C.F.R. § 778.114(a), the regulation which addresses the FWW method:  "Payment of overtime premiums and other bonus and non-overtime premium payments will not invalidate the 'fluctuating workweek' method of overtime payment, but such payments must be included in the calculation of the regular rate unless excluded under section 7(e)(1) through (8) of the [FLSA]." 73 Fed. Reg. at 43670.  The DOL also proposed to add "an example to § 778.114(b) to illustrate these principles where an employer pays an employee a nightshift differential in addition to a fixed salary."  *Id*. at 43662; *see also id.* at 43670.

After receiving comments on the various regulatory proposals, the DOL, on April 5, 2011, issued what it termed a "Final Rule," effective May 5, 2011.  *See* 76 Fed. Reg. 18832

---

[4] Had this manager instead been paid at a time-and-a-half rate for overtime hours above 40, he or she would have received $37.50 for each hour above 40, assuming a regular rate of $25/hour ($1000 per week divided by 40).  Total pay for that 50-hour workweek might then have been $1,375, rather than $1,100.  Wills' lawsuit seeks to recoup this difference.

(hereinafter, the DOL's "Final Ruling").[5]  Although adopting various other new regulations, the

DOL announced that it had decided not to implement the proposed revisions to § 778.114.

Rather, it announced, save for non-substantive revisions, it would leave the text of § 778.114

unchanged.  In an explanation it issued of the decision not to adopt the proposed revisions to

§ 778.114, the DOL stated broadly that it had concluded that bonuses and premium payments

"are incompatible with the [FWW] method of computing overtime under section 778.114."  76

Fed. Reg. at 18850.  The DOL also stated that the decision not to implement the proposed

changes would avoid "expand[ing] the use of [the FWW] method of computing overtime pay

beyond the scope of the current regulation," and "restore the current rule."  *Id.*[6]

On April 19, 2012, two RadioShack store managers, Michael Sisson ("Sisson") and

Matthew Dana ("Dana"), filed a Complaint against RadioShack in the Northern District of Ohio.

*See Sisson v. RadioShack Corp.*, No. 12 Civ. 958 (CAB) (N.D. Ohio) ("*Sisson*"), Dkt. 1.  The

plaintiffs asserted that, from the effective date of the DOL's Final Ruling (May 5, 2011) forward,

RadioShack's use of the FWW method to calculate non-exempt store managers' overtime pay

had violated the FLSA, the NYLL, and Ohio law, because RadioShack, applying the SMCP, had

paid them bonuses.  The *Sisson* Complaint was brought as a collective action under the FLSA,

and a putative class action under Fed. R. Civ. P. 23 for a sub-class of Ohio employees

represented by Sisson (under Ohio Revised Code § 4111.03), and a sub-class of New York

---

[5] The parties alternatively refer to the DOL's action on April 5, 2011 as a "Final Ruling" and as a "Final Rule."  For purposes of this Opinion, the Court will use "Final Ruling" to refer to the DOL's ruling, *see* 76 Fed. Reg. at 18832–18860 ("Updating Regulations Issued under the Fair Labor Standards Act"), which was issued on April 5, 2011 and became effective on May 5, 2011.

[6] The Court addresses the DOL's 2011 Final Ruling in greater length in the course of addressing the state of FLSA law both before, and after, that Final Ruling.  *See infra* Part III.C.

employees represented by Dana (under the NYLL Articles 6 and 19). *Id.* On June 15, 2012, RadioShack moved to dismiss. *Id.* at Dkt. 15.

On March 11, 2013, the district court granted in part and denied in part RadioShack's motion to dismiss. *Sisson v. RadioShack Corp.*, No. 12 Civ. 958 (CAB), 2013 WL 945372 (N.D. Ohio Mar. 11, 2013). The court agreed with the plaintiffs that the DOL's Final Ruling had substantively altered the DOL's construction of § 778.114, such that the agency "now considers bonus and premium payments, with the exception of overtime premium payments, incompatible with the FWW method." *Id.* at *6. The court also held it appropriate to give *Chevron* deference to that interpretation. *Id.* Accordingly, the court held, as of the effective date of the DOL's Final Ruling, RadioShack's payment of bonuses precluded using the FWW method to calculate overtime pay. *Id.* at *7. But, the court held, because "the DOL [had previously] held otherwise" RadioShack was not liable for using the FWW method before May 5, 2011. *Id.* Accordingly, the court granted the motion to dismiss as to the FLSA claim brought by Dana, the New York plaintiff, because Dana had ceased working for RadioShack before May 5, 2011, but denied the motion to dismiss as to Sisson, who had remained employed until October 2011. *Id.* The court also dismissed Dana's NYLL claim, which was premised on the theory that the NYLL tracked the FLSA as to the permissible use of the FWW method. *Id.*

### C.     Procedural History of this Case

A little over one month later, on April 24, 2013, Wills, represented by the same attorneys as the *Sisson* plaintiffs, filed a putative class action Complaint in this Court against RadioShack. The Complaint contained a single claim, to the effect that RadioShack's use of the FWW method to calculate overtime pay for non-exempt store managers, from May 5, 2011 on, had violated Articles 6 and 19 of the NYLL, because the payment of bonuses was inconsistent with the FWW

method.  Dkt. 1.[7]  In so alleging, the Complaint asserted that New York substantive law with

regard to overtime pay follows that of the FLSA.  Jurisdiction was based on diversity.  *See* 28

U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119

Stat. 4 (codified in various sections of 28 U.S.C.).

On June 4, 2013, RadioShack moved to dismiss.  Dkt. 4–5.  On June 25, 2013, Wills filed

an Amended Complaint, making the same claim under the NYLL but now seeking, in addition to

money damages, two declaratory judgments.  Dkt. 21.

On July 12, 2013, RadioShack moved to dismiss the Amended Complaint.  Dkt. 22–23.

On July 26, 2013, Wills filed an opposition.  Dkt. 24.  On August 2, 2013, RadioShack replied.

Dkt. 25.  On August 22, 2013, the Court held oral argument.

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint is properly dismissed, where, as a matter of law, "the allegations in a

complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at

558.  Accordingly, a district court must accept as true all well-pleaded factual allegations in the

complaint, and draw all reasonable inferences in the plaintiff's favor.  *ATSI Commc'ns*, 493 F.3d

---

[7] On April 22, 2013, the same attorneys also filed a putative class action against RadioShack in
the District of New Jersey, asserting a single claim under New Jersey State law.  *See Heagen v.
RadioShack Corp.*, No. 13 Civ. 2532 (PGS) (D.N.J.).  RadioShack filed a motion to dismiss on
similar grounds as those here.  *Id.* at Dkt. 3.  On October 31, 2013, the court granted plaintiff's
request to amend his complaint.  *Id.* at Dkt. 12.  On November 6, 2013, plaintiff filed an
Amended Complaint.  *Id.* at Dkt. 13.

at 98.  However, that tenet "is inapplicable to legal conclusions."  *Iqbal,* 556 U.S. at 678.  The Court "need not accord legal conclusions, deductions or opinions couched as factual allegations a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).

III.    **Discussion**

RadioShack's motion to dismiss turns on a question of law:  Under the NYLL, from May 5, 2011 forward, was it lawful for RadioShack to use the FWW method to calculate overtime pay for its non-exempt store managers, while also paying them performance-based bonuses?

The Court holds that RadioShack's use of the FWW method was lawful under the NYLL. The Court's reasoning, developed below, proceeds as follows.  First, the NYLL adopts the legal standards of the FLSA with respect to permissible overtime-pay practices.  Second, up until the DOL's May 5, 2011 Final Ruling, the FLSA and its implementing regulation, § 778.114, clearly permitted an employer to use the FWW method to calculate overtime pay for employees to whom it had paid performance-based bonuses.  Third, properly analyzed, the DOL's Final Ruling did not change the FLSA's treatment of that precise issue.  And, fourth, RadioShack is not collaterally estopped from defending its use of the FWW method.  The Court, accordingly, dismisses the Amended Complaint for failure to state a claim.

A.      **The NYLL Adopts the FLSA's Standards Governing Overtime Pay**

The NYLL does not have specific "provisions governing overtime compensation." *Ballard v. Cmty. Home Care Referral Serv., Inc.*, 695 N.Y.S.2d 130, 131 (2d Dep't 1999).  The NYLL's standards for paying overtime instead are "governed by regulations promulgated by New York Department of Labor ('NYDOL')."  *Severin v. Project Ohr, Inc.*, No. 10 Civ. 9696 (DLC), 2012 WL 2357410, at *6 (S.D.N.Y. June 20, 2012).  The NYDOL's regulations, in turn,

state that "[a]n employer shall pay an employee for overtime at a wage rate of [one and one-half]

times the employee's regular rate in the manner and methods provided in and subject to the

exemptions of sections 7 and 13 of [the FLSA]."  12 N.Y. Comp. Codes R. & Regs.

("N.Y.C.R.R.") § 142-2.2.  The regulations define an employee's "regular rate" as "the amount

that the employee is regularly paid for each hour of work," 12 N.Y.C.R.R. § 142-2.16; for

employees paid a salary rather than an hourly rate, the regular rate "shall be determined by

dividing the total hours worked during the week into the employee's total earnings."  *Id.*  These

definitions accord with those used by the DOL in construing the FLSA.  *See* 29 C.F.R.

§ 778.114(a) (in applying the FWW method of calculating overtime, an employee's regular rate

"is determined by dividing the number of hours worked in the workweek into the amount of the

salary").

 The NYDOL's regulations as to overtime pay under the NYLL thus both incorporate and

track the FLSA.  On this basis, the New York courts have consistently held that the NYLL

follows the FLSA in how it calculates statutorily required overtime pay.  *See, e.g.*, *Anderson v.

Ikon Office Solutions, Inc.*, 833 N.Y.S.2d 1 (1st Dep't 2007) (on motion to dismiss, assessing

viability of plaintiff's claim for overtime wages under the NYLL by "consider[ing] whether

defendant had established compliance with the federal fluctuating workweek standard" and

determining that there "are questions of fact as to whether the [FWW] standard has been met");

*Scott Wetzel Servs. Inc. v. N.Y. State Bd. of Indus. Appeals*, 682 N.Y.S.2d 304, 305 n.1 (3d Dep't

1998) ("An employer is obligated to pay an employee overtime pay in the manner and method

provided in . . . the FLSA.").

 Federal courts applying the NYLL have also consistently so held.  *See, e.g.*, *Clougher v.

Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 289 (E.D.N.Y. 2010) (describing New York

overtime regulations as "expressly adopting the provisions and exemptions of the [FLSA]");

*Robles v. Argonaut Rest. & Diner, Inc.*, No. 05 Civ. 5553 (JSR), 2009 WL 3320858, at *4

(S.D.N.Y. Oct. 9, 2009) ("As to the [NYLL] claims, the parties assume—and the Court is given

no reason to question—that the standards under [NYLL] are the same as under FLSA.");

*Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003) ("Because

[the NYLL] and the FLSA embody similar standards with respect to the legal issues before me, I

will consider the federal law in deciding whether defendants were joint employers."); *Bennett v.

Progressive Corp.*, 225 F. Supp. 2d 190, 215 (N.D.N.Y. 2002) (applying FLSA standards to

NYLL overtime claims); *Debejian v. Atl. Testing Labs., Ltd.*, 64 F. Supp. 2d 85, 87 n.1

(N.D.N.Y. 1999) ("Review of New York State regulations . . . reveals that they are substantially

similar to the federal scheme.") (citing 12 N.Y.C.R.R. §§ 142-2.2, 142-2.16).

In the face of this authority, RadioShack argues that the NYLL does not, in fact, follow

the FLSA in this area. For this proposition, it relies on a single NYDOL opinion letter (RO-10-

0136) from February 1, 2011, which advised a New York bank how to use the FWW method to

calculate overtime for mortgage loan originators receiving deferred commissions. Def. Br. at 7–

8. But that opinion letter does not reveal any daylight between the NYLL's and the FLSA's

treatment of overtime pay. It instead merely applies existing federal regulations to a novel

factual scenario as to which there was no on-point New York law, regulation, or court ruling.

The NYDOL therefore analyzed and reconciled two federal regulations—one addressing the

FWW method of calculating overtime pay and the other addressing deferred compensation—to

arrive at the guidance it gave. Far from revealing dissonance with the FLSA, the opinion letter

supplies an instance of the NYDOL looking to the FLSA to guide its construction of the NYLL

on an issue involving overtime pay under the FWW method.

Having found that the NYLL adopts the FLSA's standards on overtime pay, the Court

turns to consider the FLSA's treatment of overtime pay.

### B.    The FLSA's Standards Governing Overtime Pay

#### 1.    The Time-and-a-Half Method

The FLSA sets a maximum number of hours employees may work per week.  *See* 29

U.S.C. § 207.  For every hour a non-exempt employee works above 40 in a given week, the

FLSA requires employers to pay "a rate not less than one and one-half times the regular rate at

which he is employed."  29 U.S.C. § 207(a).  "This higher rate for overtime is intended to apply

financial pressure on employers to spread employment and to compensate employees for the

burden of a workweek exceeding forty hours."  *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d

1008, 1010 (N.D. Cal. 2009) (citation omitted).

For employees who are paid an hourly rate, the calculation of overtime pay is

straightforward:  The regular rate is the hourly rate.  Thus, a non-exempt employee who earns a

regular rate of $10 per hour but who works 50 hours in a given week must be paid a total of

$550—$10 per hour for the first 40 hours and $15 per hour for the remaining 10 hours.

#### 2.    The FWW Method

Calculating overtime pay becomes more complicated, however, when an employee is

paid a fixed weekly salary for hours that fluctuate each week.  For such employees, employers

are permitted to use the FWW method to comply with the FLSA's overtime requirement.  *See*

*O'Brien v. Town of Agawam*, 350 F.3d 279, 287 (1st Cir. 2003) ("The [FWW] method is one of

two approved methods in the [DOL's] FLSA regulations for calculating the regular rate at which

an employee is employed for overtime purposes" and is "intended to cover cases in which a

salaried employee whose hours of work fluctuate from week to week . . . receive[s] a fixed

12

amount as straight-time pay for whatever hours" worked in a week, "whether few or many.")
(citation omitted).  When the FWW method applies, "the minimum overtime rate required by the
FLSA is only half-time (*i.e.*, 50% of the regular rate), rather than time-and-a-half (150%)."  *Id.* at
286–87.

The FWW method derives from the decision in *Overnight Motor Transp. Co. v. Missel*,
316 U.S. 572 (1942), decided four years after passage of the FLSA.  There, an employee sued
under § 207 of the FLSA for back overtime pay.  His employer had paid him a flat weekly rate,
regardless of the number of hours he worked, but had not paid him anything extra for weeks in
which he had worked more than 40 hours.  The Supreme Court first considered whether the
employee's flat weekly wage could be used as the basis for calculating overtime pay under the
FLSA.  Section 207 requires that overtime pay be based upon the employee's "regular rate," but
does not specify how that rate is to be calculated.  The Court held that employers could, under
the FLSA, calculate an employee's regular rate by dividing a fixed weekly salary by fluctuating
hours, and then use that rate as the basis for calculating overtime pay.  *See id.* at 580 ("No
problem is presented in assimilating the computation of overtime for employees under contract
for a fixed weekly wage for regular contract hours which are the actual hours worked, to similar
computations for employees on hourly rates.  Where the employment contract is for a weekly
wage with variable or fluctuating hours the same method of computation produces the regular
rate for each week.").  As the Court recognized, this method meant that "the longer the hours the
less the rate and the pay per hour"; however, it stated, "[t]his is not an argument . . . against this
method of determining the regular rate of employment for the week in question."  *Id.*

The Court ultimately held that the employer in *Missel* had violated the FLSA by not
paying its employee for the overtime hours he worked.  But the lasting significance of the

decision is its approval under the FLSA of paying an employee a flat weekly salary for fluctuating hours so long as a premium is also paid of at least "fifty per cent additional for the hours actually worked over the statutory maximum[.]"  *Id.* at 581; *see also Russell*, 672 F. Supp. 2d at 1011; *Stein v. Guardsmark, LLC*, No. 12 Civ. 4739 (JPO), 2013 WL 3809463, at *2 (S.D.N.Y. Jul. 23, 2013).

In 1968, the DOL issued an interpretative rule, 29 C.F.R. § 778.114, which clarified how and when employers could use the "half-time" method discussed in *Missel* to calculate overtime pay.  The rule permits an employer to pay a fixed weekly salary "for the hours worked each workweek, whatever their number," so long as it provides extra pay "for all overtime hours worked at a rate not less than one-half [the] regular rate of pay."  29 C.F.R. § 778.114(a).  This regular rate "will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week."  *Id.*  Paying the employee one-half of the "regular rate" for all hours worked above 40 for the week "satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement."  *Id.*  In other words, because the fixed salary compensates the employee for all the hours worked that week—whether more or less than 40—paying an additional 50% of the "regular rate" for every hour above 40 complies with the FLSA's requirement that employers pay time-and-a-half for overtime hours.

Under § 778.114, employers may use the FWW method only if all of the following five conditions are met:

(1) the employee's hours fluctuate from week to week;
(2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week (excluding overtime premiums);
(3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage;

(4) the employer and employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and

(5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week.

*See Stein*, 2013 WL 3809463, at *3 (citation omitted); *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078 (RMB), 2007 WL 3171342, at *9 (S.D.N.Y. Oct. 9, 2007).[8]

Here, the parties agree that RadioShack's compensation plan satisfies requirements (1), (3), (4), and (5). RadioShack's non-exempt store managers work fluctuating hours, their salaries exceed the minimum wage if calculated on an hourly basis, and they receive "half-time" overtime pay for every hour worked above 40. Furthermore, the SMCP reflects a clear mutual understanding between the parties that a fixed salary compensates store managers each week for their fluctuating hours. Wills' claim that RadioShack improperly used the FWW method to calculate overtime pay therefore turns on the second requirement—that the employee receive a "fixed weekly salary."

### 3.    The "Fixed Weekly Salary" Requirement

Before the DOL issued its Final Ruling in 2011, almost every court to have addressed the issue had held that paying an employee hours-based, or time-based, bonuses and premiums—such as extra pay for holiday, weekend, or night work—offended § 778.114's requirement of a "fixed weekly salary." *See, e.g.*, *Ayers*, 2007 WL 3171342 (increased pay for sea-duty, working days off, and working holidays violates the FWW method's fixed salary requirement); *Brantley v. Inspectorate America Corp.*, 821 F. Supp. 2d 879, 890 (S.D. Tex. 2011) (same, as to off-shore, holiday and day-off premiums); *Brumley v. Camin Cargo Control, Inc.*, No. 08 Civ. 1798 (JLL),

---

[8] In New York State courts, the NYLL regulations on overtime pay incorporate the FLSA's "fluctuating workweek standard." *See, e.g.*, *Anderson*, 833 N.Y.S.2d at 1.

2010 WL 1644066 (D.N.J. Apr. 22, 2010) (same, as to enhanced lump-sum holiday and day-off pay); *Adeva v. Intertek USA*, No. 09 Civ. 1096 (SRC), 2010 WL 97991 (D.N.J. Jan. 11, 2010) (same, as to enhanced off-shore, holiday, and day-off pay); *Dooley v. Liberty Mut. Ins. Co.*, 369 F. Supp. 2d 81 (D. Mass. 2005) (same, as to enhanced lump-sum pay for Saturday work); *O'Brien*, 350 F.3d at 288 (same, as to $10 night-shift differential and extra pay for working more than eight hours or during off-duty time; court held that such pay breached FWW requirement that each police officer be paid a fixed amount "for whatever hours he is called upon to work in a workweek, *whether few or many*") (emphasis in the original). *But see Aiken v. Cnty. of Hampton, S.C.*, 977 F. Supp. 390 (D.S.C. 1997), *aff'd sub nom. Aiken v. Cnty. of Hampton*, 172 F.3d 43 (4th Cir. 1998) (defendants did not violate the FWW method by paying plaintiffs extra for working holidays).

As these cases generally recognize, when an employer pays its employees additional money for hours worked during weekends, holidays, or nights, the employees who work such premium hours will earn more than those who work normal, non-premium hours. The employees receiving such bonuses thus cannot be said to receive a "fixed salary" *regardless of hours worked*; on the contrary, employees who worked "premium" hours would receive more pay.

This form of premium pay based on hours differs in kind, however, from bonuses based entirely on performance-based metrics. Four courts have considered whether, prior to the DOL's Final Ruling, the "fixed weekly salary" requirement was breached by paying an employee bonuses tied to performance, as opposed to the number or type of hours worked. Each held, or

stated, that, so long as the bonuses and premiums were not tied to the number of hours worked by the employee, they were consistent with that requirement.[9]

In *Lance v. Scotts Co.*, No. 04 Civ. 5720 (AK), 2005 WL 1785315 (N.D. Ill. Jul. 21, 2005), the court held that the inclusion of commissions in an employee's salary base did not violate the FWW's requirement of a fixed weekly salary.  The court rejected the thesis that commissions paid to a lawn-service territory representative that varied by week meant that the employee had not been paid a fixed weekly salary.  On that basis, the court granted summary judgment to the employer.  *Id.* at *5–6.

In *Brantley*, the court considered a plaintiff's claims that payment of "off-shore, holiday, and day-off premiums" had precluded use of the FWW method.  821 F. Supp. 2d 879.  The court agreed with plaintiffs' claim that these payments were inconsistent with receipt of a "fixed weekly salary."  However, the court pointedly distinguished such payments, which were "paid based on the time or type of work assignment," from "sales-based or production-based bonuses and commissions." *Id.* at 889–890.

In *Soderberg v. Naturescape, Inc.*, No. 10 Civ. 3429, 2011 U.S. Dist. LEXIS 156235 (D. Minn. Nov. 3, 2011), the court held that a lawn care provider's payment of performance-based bonuses to branch managers and lawn specialists did not bar it from using the FWW to calculate these workers' overtime pay.  The bonuses at issue there were tied to objective performance metrics.  *Id.*  The court therefore framed the issue as whether paying such "non-discretionary[,]

---

[9] This distinction, between hours-based and performance-based bonuses, is mirrored by a similar distinction in the FLSA concerning how to calculate an employee's regular rate of pay.  Under 29 U.S.C. §§ 207(e)(5)–(7), an employee's regular rate of pay excludes extra compensation that is hours-based—*i.e.*, extra pay for working more than eight hours in a day or on weekends, off-days, or holidays.  But performance-based bonuses that are not listed in 29 U.S.C. § 207(e) are considered part of an employee's regular rate of pay.  *See* 29 C.F.R. § 778.208 ("Bonuses which do not qualify for exclusion from the regular rate . . . must be totaled in with other earnings to determine the regular rate on which overtime pay must be based.").

performance-based bonuses precludes use of the FWW." *Id.* at *11. The court distinguished

cases in which paying "hourly shift premiums and shift differentials" or extra pay for working

"vacation days and scheduled days off" had been held to violate the fixed salary principle. *Id.*

Such payments were "inconsistent with the FWW because the FWW expressly requires that the

salary be fixed regardless of whatever hours the employee is called upon to work in a

workweek," and "[w]hen employees are given additional compensation because of how or when

those hours are worked, the salary is no longer fixed." *Id.* at *12–13 (citing 29 C.F.R. §

778.114(a)). By contrast, the court reasoned, when bonuses are "based on criteria untethered to

the hours" worked, and instead are based on "individual and collective performance," the

employee is "paid the same weekly salary regardless of the number of hours worked." *Id.* at *13.

Thus, the court held, in such cases, the "payment of performance-based bonuses [does] not

preclude application of the FWW." *Id.* at *16.

Finally, in *Switzer v. Wachovia Corp.*, No. H-11-1604 (NFA), 2012 WL 3685978 (S.D.

Tex. Aug. 24, 2012), the court upheld Wachovia's use of the FWW method despite its bonus

payments to financial specialists.[10] The court distinguished Wachovia's bonuses—paid based on

performance metrics such as sales growth, portfolio growth, and customer service—from

bonuses that courts had held inconsistent with the FWW method, such as for working on nights,

weekends, or holidays. *Id.* at *3. Such "hours-based" bonuses were inconsistent with the DOL's

regulation regarding the FWW method, the court explained, because "an employee who worked

---

[10] Both *Switzer* and *Soderberg* were decided after the DOL's Final Ruling, but involved overtime
pay before the date of that ruling, and thus the Final Ruling had no bearing on whether it was
appropriate to use the FWW method in those cases. *Switzer* involved overtime payments made
before November 16, 2009. *See Switzer*, 2012 WL 3685978, at *4. The *Soderberg* Complaint
was filed on August 12, 2010, based on overtime pay practices that had ended by March 2010,
after which the five named plaintiffs no longer worked for the employer, Naturescape. *See
Soderberg v. Naturescape, Inc.*, No. 10 Civ. 3429 (D. Minn.), Dkt. 1.

four hours on a holiday would receive more additional compensation than an employee who worked two hours on a holiday." *Id.*  But, the court held, because Wachovia's performance-based bonuses "did not vary with the number of hours worked," they did not violate the fixed-salary requirement.  *Id.*  On that basis, the court granted summary judgment to Wachovia.  *Id.* at *5.[11]

Wills disparages the four cases finding performance-based bonuses consistent with the FWW as "irrelevant anachronisms," because unlike his claims, all involved conduct that predated the DOL's Final Ruling (including *Switzer* and *Soderberg*, which were decided after the date of the Final Ruling).  Pl. Br. at 17.  But this body of case law is in fact quite relevant.  It shows how courts have interpreted the language of § 778.114, which, significantly, the Final Ruling left intact.  It demonstrates the development by the courts of a rational distinction between bonuses that turn on hours worked, and bonuses that do not, under which performance-based bonuses were uniformly held consistent with the FWW.  Finally, it supplies an important context for construing the Final Ruling, both as to whether it was intended to address performance-based bonuses, and whether, as a matter of law, DOL's Final Ruling can undo a uniform interpretation by the courts applying the text of a substantively unchanged regulation.

---

[11] *West v. Verizon Services Corp.,* No. 08 Civ. 1325 (VMHC), 2011 WL 208314 (M.D. Fla. Jan. 21, 2011) did not hold to the contrary—*i.e.*, that performance-based bonuses violate the FWW method's fixed salary requirement.  In *West* the court denied summary judgment based on unresolved material facts as to whether the plaintiff worked overtime, and if so, whether the employer knew this.  The court went on to state that, were a jury to find for plaintiff, damages would be calculated at time and one-half, because "the arrangement between West and Defendants did not comport with the [FWW] requirements."  *Id.* at *11.  But that was due to two FWW-disqualifying facts unrelated to performance bonuses:  (1) plaintiff's hourly rate was below minimum wage; and (2) her hours did not fluctuate (she worked 72 hours each week).  *Id.*  The court did state that plaintiff's "salary was not fixed because she had received various bonus payments and commissions," *id.*, but it did not offer any analysis in support of that conclusory dicta.

As a final preface to considering the impact of the DOL's Final Ruling, the Court notes that the reasoning in these decisions, particularly *Switzer* and *Soderberg*, is persuasive. These cases note that, as a textual matter, the requirement of a "fixed weekly salary" is met even where bonuses based on store's performance are paid to employees from time to time, because such bonuses do not affect an employee's "fixed weekly salary." Where bonuses are paid based on a store or business unit's quarterly or annual performance, it is a misnomer to suggest that these bonuses affect an employee's weekly salary. The outcome in these cases is also consistent with the Supreme Court's interpretation of the FLSA in *Missel*, which is the foundation on which § 778.114 was based.

### C.    The DOL's 2011 Final Ruling

Analysis of the Final Ruling properly begins by noting the state of the law as of the point, in 2008, when the DOL proposed to modify § 778.114. As noted, courts had generally, but not uniformly, held that hours-based bonuses were inconsistent with § 778.114's requirement of a fixed weekly salary. The DOL therefore proposed to change § 778.114 to permit, expressly, the FWW method to be used where such hours-based bonuses were paid. *See* NPRM, 73 Fed. Reg. 43654. By its terms, the DOL's proposal had nothing to do with performance-based bonuses: On the contrary, use of the FWW method by employers who paid such bonuses accorded with the text of § 778.114 and had never been held improper.

In the end, the DOL elected not to implement the proposed rule and to leave the text of § 778.14 substantively unchanged. *See* 76 Fed. Reg. 18832. In explaining that decision, the DOL used broad language—which, taken out of context, can certainly be read, as the district court read it in *Sisson*, to preclude use of the FWW method where *any* form of bonus payment has been made. But the DOL's Final Ruling must be read in context. Properly read, this Court

20

concludes, it was not intended to, and does not, disturb the law permitting employers to use the FWW method to calculate the overtime pay of workers who receive performance bonuses. Instead, the Final Ruling (at least as to § 778.114) is what it appears to be: a decision to maintain the status quo, both as to the text of the governing regulation and its application to different types of bonuses.

A close analysis of, first, the proposed revision and, second, the Final Ruling yields this conclusion.

As to the proposed revision: The NPRM's preamble stated that "the regulations governing the [FWW] method of computing half-time overtime pay for salaried nonexempt employees who work variable or fluctuating hours from week to week are in need of clarification and updating to delete outmoded examples and *eliminate confusion over the effect of paying bonus supplements and premium payments* to affected employees."  73 Fed. Reg. at 43655–56 (emphasis added).  The DOL proposed to change the regulation to "provide that bona fide bonus or premium payments do not invalidate the [FWW] method of compensation."  *Id*. at 43662.  To that end, the agency's proposed rule would have added one sentence to § 778.114(a):  "Payment of overtime premiums and other bonus and non-overtime premium payments will not invalidate the 'fluctuating workweek' method of overtime payment, but such payments must be included in the calculation of the regular rate unless excluded under section 7(e)(1) through (8) of the [FLSA]."  *Id*. at 43670.  The proposal also "add[ed] an example to § 778.114(b) to illustrate these principles where an employer pays an employee a nightshift differential in addition to a fixed salary."  *Id*. at 43662; *see also id.* at 43670.

Importantly, the context that gave rise to the agency's impulse to issue a clarifying rule as to the FWW solely involved hours-based bonuses.  Only hours-based bonuses had been held by

the courts to preclude use of the FWW method for calculating overtime pay.  The DOL's

statement of proposed rule-making reflected that it was such cases—ones concerning hours-

based bonuses—that had led it to act:

> Paying employees bonus or premium payments for certain activities *such as working undesirable hours* is a common and beneficial practice for both employers and their employees.  The Department's proposed clarification would eliminate any disincentive for employers to pay additional bona fide bonus or premium payments.

*Id.* at 43665 (emphasis added).  Significantly, the reference to bonuses for working "undesirable

hours" plainly refers to the bonuses for weekend pay, night pay, and holiday pay.  Such bonuses,

as noted, had been widely held inconsistent with the "fixed weekly salary" requirement.  This

reference does not describe bonuses awarded for a store or business unit's performance.

Moreover, at the time of the NPRM, the issue of whether performance bonuses precluded

use of the FWW method had scarcely arisen in the case law.  Of the four cases discussed above,

*Switzer*, *Soderberg*, and *Brantley* were all decided after the Final Ruling was issued; and *Lance*

involved the technically distinct (although closely related) issue of the impact of an employee's

earned commissions on the use of FWW.  This reinforces that the only issue on the DOL's radar

screen as of the time it proposed a clarifying amendment was the compatibility of *time-based*

bonuses with the FWW method.

Unsurprisingly, therefore, the example that DOL proposed to add to § (b)(1)—illustrating

a bonus that, under the modified rule, would be consistent with use of the FWW—was modeled

on hourly-bonus case: *O'Brien v. Town of Agawam*, which struck down a $10 wage premium for

nightshift hours.  *See* 350 F.3d 279.  The example was:

> If, in each week in the examples in paragraph (b)(1) of this section, 4 of the hours the employee worked were *nightshift hours compensated at a premium rate of an extra $5.00 per hour*, the employee's total compensation would be calculated as follows:  For the first week [of 40 hours] the employee is entitled to be paid $620

22

(salary compensation of $600 plus $20.00 of non-overtime premium pay, with no overtime hours); for the second week [of 44 hours] $648.20 (salary compensation of $600 plus $20.00 of non-overtime premium pay, with a regular rate of $14.09 and four hours of overtime at $7.05 for a total overtime payment of $28.20); for the third week [of 50 hours] $682.00 (salary compensation of $600 plus $20.00 of non-overtime premium pay, with a regular rate of $12.40 and ten hours of overtime at $6.20 for a total overtime payment of $62.00) . . . .

*Id.* at 43670 (emphasis added).

In sum, viewed in context, the change that the DOL proposed was directed solely at establishing that payment of hours-based bonuses did not preclude use of the FWW. The DOL's proposal did not, in any way, implicate performance-based bonuses, which had not, up to that point, presented a significant issue, let alone ever been held to offend the FWW method's fixed weekly salary requirement.

As to the Final Ruling: To the extent relevant to § 778.114, the Final Ruling began by stating that the DOL was "not proceeding with some of the changes proposed in the NPRM including proposed changes to regulations regarding . . . the fluctuating workweek . . . ." *See* 76 Fed. Reg. at 18832 (effective on May 5, 2011). Therefore, the substantive text of § 778.114 remained the same.[12]

The DOL next summarized the input it had received from various commenters.[13] It then explained its reasons for not implementing the proposed modification:

----

[12] The DOL described the changes made to § 778.114 solely as follows: "Editorial revisions have been included in the text of the final rule to delete gender-specific references and to update the computation examples to provide wage rates above the minimum wage and the exact calculation of the regular rate." 76 Fed. Reg. at 18850. It added that, because the substantive text of the rule had not changed, the "proposed examples in the NPRM at § 778.114(b)(2) suggesting methods for making supplemental nightshift premium payments as part of the [FWW] methodology for computing half-time overtime pay have been deleted from the final rule." *Id.*

[13] The DOL stated that the comments it had received "were sharply divided"—in general, "commenters representing employers favored the revisions while commenters representing employees strongly opposed the revisions." 76 Fed. Reg. at 18849. "Comments expressing strong opposition to the proposed revisions" had two main critiques: (1) "that receipt of

> While the [DOL] continues to believe that the payment of bonus and premium payments can be beneficial for employees in many other contexts, we have concluded that unless such payments are overtime premiums, they are incompatible with the [FWW] method of computing overtime under section 778.114.  As several commenters noted, the proposed regulation could have had the unintended effect of permitting employers to pay a greatly reduced fixed salary and shift a large portion of employees' compensation into bonus and premium payments, potentially resulting in wide disparities in employees' weekly pay *depending on the particular hours worked*. . . . The basis for allowing the half-time overtime premium computation under the [FWW] method is the mutual understanding between the employer and the employee regarding payment of a fixed amount as straight time pay for *whatever hours are worked each workweek, regardless of their number*.   While the example provided in the NPRM of nightshift premiums resulted in a relatively modest change in the employee's straight time pay, the [DOL] now believes that the proposed regulation would have been inconsistent with the requirement of a fixed salary payment set forth by the Supreme Court in *Overnight Motor Transport* v. *Missel*.  Moreover, on closer examination, the [DOL] is persuaded that the courts have not been unduly challenged in applying the current regulation to additional bonus and premium payments.  *See O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003); *Adeva v. Intertek USA*, 2010 WL 97991 (D.N.J. 2010); *Dooley v. Liberty Mutual Ins. Co.*, 369 F. Supp. 2d 81 (D. Mass. 2005); *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326 (S.D.N.Y. 2007).

76 Fed. Reg. at 18850 (emphases added).

This paragraph—the only portion which embodies DOL's actual analysis—is central to construing the agency's Final Ruling.  The broad language used in this paragraph to express its conclusions (to the effect that bonus or premium payments are incompatible with FWW) is in considerable tension with the much more targeted reasoning and case citations used in the same

---

premium and bonus payments is inconsistent with payment of a fixed salary"; and (2) "that the proposed revisions will encourage employers to schedule additional overtime for employees paid under the [FWW] method or otherwise disadvantage workers by expanding its use to a larger portion of the workforce."  *Id.*  A number of comments also "questioned the [DOL's] authority for making the revisions and asserted they would administratively overturn uniform, well-settled case law without justification."  *Id.*  Some commenters also "noted that the proposal would permit employers to reduce employees' fixed weekly salaries and shift the bulk of the employees' wages to bonus and premium pay."  *Id.* at 18850.  No comment summarized by the DOL specifically addressed performance-based bonuses.

paragraph.  The reason given in the Final Ruling for precluding use of the FWW where bonuses had been paid is that disparities in a worker's weekly pay should not "depend[] on the particular hours worked."  76 Fed. Reg. at 18850.  That is the same principle under which the courts had overwhelmingly held that § 778.114 forbade the FWW method where hours-based premium pay caused a worker's pay to vary by hours worked.  But that principle is not offended where the worker has received performance-based bonuses, for these *do not* cause a weekly salary to vary by hours worked.  And the cases cited by the DOL do not support the sweeping conclusion, urged by Wills, that any form of bonus, even if keyed to the performance of a store or business unit and not to the individual employee, would preclude use of the FWW method.  On the contrary, every case cited by the DOL involved hours-based, not performance-based, bonuses.  *See O'Brien*, 350 F.3d 279 (a $10 differential for night shifts); *Adeva*, 2010 WL 97991 (day off pay, offshore pay, and holiday pay); *Dooley*, 369 F. Supp. 2d 81 (lump-sum pay for working on Saturday); *Ayers*, 2007 WL 3171342 (at-sea or day-off pay).

Tellingly, the DOL nowhere in the Final Ruling acknowledged performance-based bonuses at all.  It did not do so explicitly; it did not do so implicitly, for example, by citing fact patterns addressing such bonuses.  And, as noted, as of the Final Ruling, no case involving the application of the FWW to true performance bonuses had been decided.  It thus appears likely that, although its references to bonuses in the Final Ruling were cast in broad language, the DOL did not have performance-based bonuses in mind when it formulated that language.  The lack of any reference, direct or indirect, to performance-based bonuses in the DOL's Final Ruling is, in this Court's view, the proverbial dog that did not bark.  Had the DOL actually intended to rule that both hours-based and performance-based bonuses would henceforth preclude use of the FWW method, it is hard to imagine that the DOL would not, somehow, have said so.

25

In the final section of the Final Ruling, the DOL stated:

> The [DOL] does not believe that it would be appropriate *to expand the use of this method* of computing overtime pay *beyond the scope of the current regulation.* Accordingly, *the final rule has been modified from the proposal to restore the current rule* requiring payment of the fixed salary amount as the straight time pay for whatever hours are worked in the workweek . . . .

76 Fed. Reg. at 18850 (emphases added).  This statement strongly supports the conclusion that, in the Final Ruling, the DOL did not intend to change its regulation in any substantive way.  And the existing regulation, as noted, permitted performance-based bonuses, as various courts have subsequently, but uniformly, recognized.  The agency's statement that it had decided not to "expand the use of [the FWW method] beyond the scope of the current regulation," but instead to "restore the current rule," *id.*, is hard to square with Wills' contention that the DOL in fact intended to prospectively change the application of § 778.114 to bar any use of the FWW method when employers pay performance-based bonuses.  Far more likely is that the DOL, being focused solely on the hours-based context, was oblivious to the potential implications of its broad prose for these very different types of bonuses.  The DOL's concluding observation points to the same conclusion.  DOL stated that, because the status quo was being maintained, there was, necessarily, no "measurable economic impact on the public."  76 Fed. Reg. at 18853.  The status quo, however, entailed *permitting* the FWW method to be used where performance bonuses had been paid.  Had the DOL believed it was invalidating the FWW method where performance bonuses had been given, it would have stated that it was changing the status quo, and presumably would have then considered the economic impact of such a change.

Accordingly, the DOL's Final Ruling, closely read, reveals an intention to leave in place the status quo, not to disturb it, as the rule proposed in 2008 would have done.  Despite its admittedly sweeping language in points, the Final Ruling is not properly read to have moved the

law in the opposite direction from that contemplated in the proposed rule, so as to tacitly change § 778.114 to preclude the FWW method in cases of performance-based bonuses. The Court, therefore, reads the Final Ruling as leaving in place the distinction between hours-based bonuses, which are incompatible with the FWW requirement of a "fixed weekly salary," and performance-based bonuses, which are not.

Separately, even if the DOL's Final Ruling had been intended to address how § 778.114 was to apply to performance-based bonuses, the Court is doubtful that that pronouncement would have been effective to reverse the interpretation most consistent with the plain language of the rule. Section 778.114 was issued by the DOL as an interpretive bulletin. It was not subject to formal notice and comment rulemaking proceedings, and was therefore itself not entitled to deference. *See Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 529 (S.D.N.Y. 2013); *O'Brien*, 350 F.3d at 287 n.15. But because § 778.114 "represents the Secretary of Labor's implementation of the Supreme Court's holding in *Missel*, courts have afforded it a measure of deference." *Stein*, 2013 WK 3809463, at *2. Thereafter, it has been construed, by the courts, to permit employers to pay performance-based bonuses while using the FWW method to calculate overtime pay. *See supra*, Part III.B.3.

Presumably, the DOL could have substantively changed that rule as applied to performance-based bonuses, by changing § 778.114's text and/or by undertaking notice-and-comment rulemaking under which the agency gave notice of its intention to modify § 778.114 in this fashion. But the DOL did neither; the rulemaking proceeding initiated in 2008 was prompted by the DOL's notice of its intention to *broaden* the use of FWW beyond what the federal courts had approved, not to restrict it. And, as noted, the courts have uniformly read the requirement of a "fixed weekly salary" to be met where a worker's only bonuses were

performance-based.  It is doubtful that DOL can reverse the courts' uniform construction of the plain language of an interpretive regulation without changing the text of that regulation, let alone without giving notice of its intent to do so and an opportunity for comment.

In any event, limited deference is due to an agency's bare statement of opinion.  *See, e.g., Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (distinguishing DOL opinion letter from an interpretation arrived at after "a formal adjudication or notice-and-comment rulemaking"). And such deference is warranted to an agency's interpretation of its own regulation "only when the language of the regulation is ambiguous."  *Id.* at 588; *see Auer v. Robbins*, 519 U.S. 452 (1997); *cf. Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (deference to agency interpretation is "undoubtedly inappropriate" when interpretation is plainly erroneous or inconsistent with the regulation").  Given the courts' unanimous holdings that performance-based bonuses are consistent with § 778.114's requirement of a "fixed weekly salary," the DOL would have a hard time claiming that that standard is met.  Still less is deference due given that the Final Ruling, which addresses bonuses generally, does not acknowledge the distinct context of performance-based bonuses.  *See Christensen*, 529 U.S. at 588 (no deference due where deferring to new interpretation "would . . . permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation").

In sum, the Court holds, the DOL's Final Ruling did not interpret or change the substance of § 778.114 as applied to performance-based bonuses.  Use of the FWW method for calculating overtime pay was at all times consistent with § 778.114's "fixed weekly salary" requirement. Accordingly, RadioShack's use of the FWW method to calculate the overtime pay of its non-exempt store managers, such as Wills, violated neither the FLSA nor the NYLL.

### D.    Collateral Estoppel

Wills, finally, argues that, regardless of the merits, RadioShack is collaterally estopped by the decision in *Sisson* from arguing that using the FWW method to measure overtime pay for managers such as Wills was permissible.  Pl. Br. at 10 (citing *Sisson v. RadioShack Corp.*, No. 12 Civ. 958 (CAB), 2013 WL 945372 (N.D. Ohio Mar. 11, 2013)).

"The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)).  Collateral estoppel is permitted if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks omitted).  Importantly, "[t]hese four factors are required but not sufficient." *Bear, Stearns & Co. Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005).  The Court must also "satisfy itself that application of the doctrine is fair." *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).

Here, plaintiffs seek "to employ collateral estoppel offensively." *Bear Stearns*, 409 F.3d at 91 (citation omitted).  Specifically, they seek to use the district court outcome in *Sisson* to bar RadioShack from arguing here that it was permitted to use the FWW method to calculate the overtime pay due to non-exempt store managers.  Trial courts have broad discretion in deciding when to permit the offensive use of collateral estoppel.  *See Parklane Hosiery*, 439 U.S. at 331 ("The general rule should be that in cases where  . . . the application of offensive estoppel would

29

be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.").
"Allowing offensive collateral estoppel may . . . be unfair to a defendant if the judgment relied
upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in
favor of the defendant." *Id.* at 330.  In the classic example, "if a railway accident injured 50
people, and the first 25 people who sued the railroad lost, and the 26th person won, the
remaining plaintiffs ought not be able to win by estoppel." *Bear Stearns*, 309 F.3d at 91 (citing
*Parklane Hosiery*, 439 U.S. at 330 n.14).

As noted, in *Sisson*, claims—substantively identical to those here—were brought on
behalf of a putative class of RadioShack store managers seeking overtime back pay under the
FLSA, the NYLL, and the Ohio labor law.  2013 WL 945372.  The *Sisson* court denied
RadioShack's motion to dismiss in part, holding that the DOL, effective May 5, 2011, now
considered "bonus and premium payments, with the exception of overtime premium payments,
incompatible with the FWW method." *Id.* at *6.  The Court, however, granted RadioShack's
motion to dismiss claims by plaintiffs who ceased working for RadioShack before May 5, 2011.
*Id.* at *7.

At present, the district court's partial denial of RadioShack's motion to dismiss in *Sisson*
is on appeal.  On August 9, 2013, the district court granted RadioShack's motion under 28
U.S.C. § 1292(b) to permit interlocutory appeal and to stay the case pending review by the Sixth
Circuit Court of Appeals.  *Sisson v. RadioShack Corp.*, No. 12 Civ. 958 (N.D. Ohio Aug. 9,
2013), Dkt. 63.  The *Sisson* court noted that "§ 1292(b) allows for interlocutory appeals of . . .
*non-final court orders*," *id.* at 3 (emphasis added); it noted that "the Sixth Circuit has cautioned
. . . that review under § 1292(b) should be sparingly granted and then only in exceptional cases,"
*id.* at 4.  The court nonetheless granted leave to appeal and stayed the case because:

> [T]here is *significant room for differing opinions* based on the Court's own struggles with this issue and with the deference to be afforded the DOL's Final Rule.  Courts upheld the FWW method prior to the DOL's reinterpretation and neither the parties nor the Court were able to discover caselaw that considered the issue after the new Rule.  This purely legal issue will ultimately be dispositive.  If the FWW method is permitted, Plaintiffs' claims must be dismissed.  If not, Plaintiffs would be entitled to additional overtime pay.

*Id.* (emphasis added).  As of this writing, the Sixth Circuit has not announced whether it will grant RadioShack's petition for interlocutory appeal.

In arguing for collateral estoppel based on *Sisson*, Wills notes that the decision there conflicts with RadioShack's arguments here that:  (1) the plain meaning of § 778.114 permits the FWW method to be used where performance-based bonuses are paid; and (2) the DOL's Final Ruling did not, and/or could not, change the plain meaning of § 778.114.  The Court declines to apply collateral estoppel here, for three independent reasons.

First, the *Sisson* court's decision on which Wills relies fails a requirement for offensive collateral estoppel:  It is not "a valid and final judgment on the merits."  *Interoceanica Corp.*, 107 F.3d at 91.  A grant of a motion to dismiss may be considered a judgment on the merits. *See, e.g.*, *Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 416 (E.D.N.Y. 2010). Here, however, the pertinent part of RadioShack's motion to dismiss was denied.  And that denial is presently subject to an interlocutory appeal.  Although the pendency of an appeal does not affect the finality of a judgment for the purpose of collateral estoppel, *see Studer v. SEC*, 148 Fed. App'x 58, 59 (2d Cir. 2005), that presupposes a final judgment.  Here, there has been no final judgment, because the litigation between plaintiffs and RadioShack is ongoing and currently stayed, and the appeal was granted under § 1292(b), which relates to the appeal of *non-final* court orders.  Accordingly, there is no final judgment to which the Court could grant preclusive effect.

Second, allowing plaintiffs to use collateral estoppel in a non-mutual, offensive manner would be highly unfair to RadioShack.  Before the *Sisson* decision, RadioShack's use of the FWW method had been challenged, in at least one state-court proceeding, and upheld.  *See, e.g.*, *Inniss v. Tandy Corp.*, 141 Wash.2d 517 (2000) (holding that RadioShack's use of the FWW method in an earlier version of the SMCP did not violate Washington State law, which, in relevant respects, tracked the FLSA).  This case thus echoes the classic example given in *Parklane Hosiery,* disfavoring collateral estoppel where a plaintiff seeks to cherrypick one decision that was unfavorable to the defendant and ignore other decision(s) favoring the defendant on the same issue.

Third, this case presents complex, novel issues: specifically, how to interpret the DOL's 2011 Final Ruling and whether the FWW method may be used to calculate overtime pay where employees have been paid performance-based bonuses.  Generally, collateral estoppel is appropriate when "the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."  *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) (citing *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied*, 368 U.S. 986 (1962)).  That is not so here.  *Sisson* itself recognized that the application of the DOL's Final Ruling to performance-based bonuses presented a difficult issue of first impression with "significant room for differing opinions." *Sisson*, No. 12 Civ. 958, Dkt. 63, at 4.  And indeed, this Court has now reached a different conclusion on that issue from the one reached by its sister court in Ohio.

When multiple courts tackle a challenging legal problem, the productive development of the law is advanced by allowing such percolation to proceed.  Applying offensive collateral estoppel in this case would not only shackle RadioShack.  It would also prevent this Court, and

potentially the United States Court of Appeals for the Second Circuit, from deciding this case on the merits.  It would thereby pretermit the constructive process in which multiple courts consider the legal meaning of DOL's Final Ruling, itself only a little more than two years old.  There is no good reason to invite this outcome.  If Wills (and the class he seeks to lead) is destined to prevail in this litigation, he must do so on the merits, not by claiming that the decision by the district court in *Sisson* binds RadioShack here.

## CONCLUSION

For the foregoing reasons, RadioShack's motion to dismiss is granted.  The Clerk of Court is directed to terminate the motions at docket numbers 4 and 22, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: November 7, 2013
      New York, New York

33